**IN RE: Jill Marie HOGGARTH,**
**Debtor.**

**Bankruptcy Case No. 14–24810 EEB**

United States Bankruptcy Court,
D. Colorado.

Signed February 23, 2016

Andrea L. Morrow, Denver, CO, for Debtor.

## ORDER DENYING APPLICATION FOR PAYMENT OF ADMINIS-TRATIVE CLAIM FROM UNDIS-TRIBUTED PLAN PAYMENTS

Elizabeth E. Brown, Bankruptcy Judge

This matter is before the Court on the Application for Payment of Administrative Claim, filed by Andrea L. Morrow, counsel for the Debtor ("Counsel"), to which the chapter 13 trustee, Douglas B. Kiel ("Trustee") has objected. The amount of Counsel's fees are not in dispute. The question before the Court is whether the Supreme Court's recent decision in *Harris v. Viegelahn,* —— U.S. ——, 135 S.Ct. 1829, 191 L.Ed.2d 783 (2015) (*"Harris"*) prohibits the Trustee from paying Counsel's fees out of undistributed chapter 13 plan payments held at the time of conversion of this case to a chapter 7 proceeding.

The Debtor filed her chapter 13 case on October 31, 2014. At that time, Counsel filed a Disclosure of Compensation stating that she had agreed to accept $3,600.00 from the Debtor for services to be performed, of which $1,390.00 had been paid pre-petition, and the balance of $2,210.00 would be paid through the Debtor's chapter 13 plan payments. The Trustee objected to confirmation based on his contention that the Debtor's vehicle expense was unnecessary and unreasonable. Before the Court could resolve this issue, the truck was damaged in an accident and the Debtor elected to convert her case. About one month later, Counsel filed the Application. In it, she alleges that the Trustee is holding $3,080.50 in undistributed chapter 13 plan payments and she requests that her fees be paid from this source.

Shortly thereafter, the Supreme Court issued its opinion in *Harris*, in which it held that, upon the conversion to chapter 7, any undistributed plan payments representing post-petition wages held by a chapter 13 trustee must be returned to the debtor and not distributed to creditors. Based on this holding, the Trustee objected to Counsel's request to be paid from plan payments. Counsel urges the Court to distinguish *Harris* from this case.

## I. THE HARRIS DECISION

In *Harris*, the debtor made plan payments to his trustee from his post-petition wages. More than one year after confirmation and after his mortgage lender had obtained relief from stay to foreclose, Harris converted his case to chapter 7. At that time, his chapter 13 trustee was holding $5,519.22 in undistributed plan payments. From these funds, the trustee paid Harris'

counsel, paid her own trustee's fee, and distributed the balance to one secured creditor and six unsecured creditors. The debtor filed a motion demanding the return of these funds.[1] The bankruptcy court granted his motion and the district court affirmed its decision. The Fifth Circuit, however, reversed on the ground that considerations of equity gave creditors a superior claim to the undistributed funds. *In re Harris*, 757 F.3d 468, 478–481 (5th Cir.2014). The Supreme Court granted certiorari to resolve a conflict between this Fifth Circuit decision and the Third Circuit's contrary ruling in *In re Michael*, 699 F.3d 305 (3rd Cir.2012), in which the Third Circuit held that undistributed post-petition wages must be returned to the debtor at the time of conversion. *In re Harris*, 135 S.Ct. at 1836.

The Supreme Court resolved the split in favor of the Third Circuit approach. In doing so, the Supreme Court began its analysis with § 348(f).[2] This statute provides that, on conversion from chapter 13 to chapter 7, property of the estate in the converted case shall consist of the property of the estate "as of the date of filing of the petition." 11 U.S.C. § 348(f)(1)(A). However, if the debtor converts from chapter 13 to chapter 7 "in bad faith," then the property of the estate shall consist of the property of the estate "as of the date of conversion." § 348(f)(2). The difference in these two dates is significant. If property of the estate in the converted case is measured from the petition date, then it will not include any post-petition wages because such earnings are expressly excluded from property of the estate by § 541(a)(6). If it is measured from the

---

1. Harris did not seek the return of attorney fees paid to his counsel. He had filed, as an attachment to his notice of conversion, an assignment to his attorney of $1,200 of the funds in the trustee's possession at the time of conversion.

2. All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.

conversion date, it will include post-petition wages paid to the trustee during the chapter 13 case because such funds became property of the estate under § 1306(a)(2). Section 348(f)(2) only cuts off the chapter 7 trustee's interest in post-petition wages from the date of the conversion, not retroactively to the date of the petition.

Thus, in the absence of bad faith, a debtor's post-petition wages in the hand of a chapter 13 trustee do not become part of the chapter 7 estate when a case is converted. *Id.* at 1837. The Court reasoned that,

> [b]y excluding postpetition wages from the converted Chapter 7 estate, § 348(f)(1)(A) removes those earnings from the pool of assets that may be liquidated and distributed to creditors. Allowing a terminated Chapter 13 trustee to disburse the very same earnings to the very same creditors is incompatible with that statutory design.

*Id.* This statute puts a debtor back into the same position he would have held if he had originally filed for chapter 7 relief. Undoubtedly, Congress did not want to penalize a debtor who at least attempts a repayment plan. A penalty is imposed only if the debtor converts "in bad faith."

The Court turned next to § 348(e), which provides that conversion of a case from chapter 13 to chapter 7 "terminates the service of [the chapter 13] trustee." Since making payments to creditors is one of the core services provided by a chapter 13 trustee, "the moment a case is converted from Chapter 13 to Chapter 7 ... the Chapter 13 trustee is stripped of authority to provide that 'service.'" *Id.* at 1838. The *Harris* debtor argued that distributing these funds was nothing more than part of the trustee's duty to wind up the chapter 13 case. The Court rejected this notion as well, noting that a chapter 13 trustee's wind-up authority is confined to those matters set out in Fed. R. Bankr.P. 1019—turning over records and estate assets to the chapter 7 trustee and filing a final report.

In *Harris*, the debtor next argued unsuccessfully that §§ 1327(a) and 1326(a)(2) authorized the post-conversion payments to creditors. Section 1327(a) provides that a confirmed plan binds the debtor and each creditor to the terms of the plan and § 1326(a)(2) instructs a trustee to distribute payments in accordance with the plan. The Court stated that these provisions "ceased to apply once the case was converted to Chapter 7." *Id.* The Court went further to state that once a chapter 13 debtor exercises his statutory right to convert his case to chapter 7, "the case is placed under Chapter 7's governance, and *no Chapter 13 provision holds sway.*" *Id.* (emphasis added). Thus, after conversion, Harris' plan was no longer binding, and his "*former* chapter 13 trustee, lacked authority to distribute payments in accordance with the plan." *Id.* (emphasis in original). Moreover, a confirmed chapter 13 plan gives creditors no vested right to funds held by a trustee. *Id.* at 1839.

Finally, the Court rejected the notion that a return of undistributed plan payments to the debtor would give the debtor a windfall. "We do not regard as a 'windfall' a debtor's receipt of a fraction of the wages he earned and would have kept had he filed under Chapter 7 in the first place." *Id.*

## II. APPLICATION OF *HARRIS*: DISTINCTIONS WITHOUT A DIFFERENCE?

In this case, the Debtor contends that the *Harris* decision is distinguishable from her case. Granted, there are some factual differences. First, the Debtor's plan was not confirmed prior to her election to convert her case to chapter 7. Har-

ris' plan was confirmed more than one year before his case was converted. Second, the claim to be paid from undistributed plan payments here is Counsel's § 503(b) administrative expense claim for the balance of her attorney fees for the chapter 13 case. In *Harris,* the debtor only sought the return of payments made by the chapter 13 trustee to pre-petition secured and unsecured creditors and the chapter 13 trustee's own fees. *In re Harris,* 757 F.3d at 471.

Does the pre-confirmation status of the Debtor's plan and the nature of Counsel's claim in this case make a difference to the legal outcome? Counsel first relies on § 1326(a)(2) and, in particular, its third sentence. This entire subsection states:

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. **If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor,** *after deducting any unpaid claim allowed under section 503(b).*

(emphasis added). This statute clearly contemplates a carve-out for payment of administrative expense claims before the return of any funds to the debtor.

Subsequent to *Harris,* one court has ruled that the pre-conversion status of the case compels a different result based on this third sentence. *In re Brandon,* 537 B.R. 231 (Bankr.D.Md.2015). The *Brandon* court recognized that the services of a chapter 13 trustee are terminated regardless of whether conversion occurs before or after confirmation, but it found the third sentence of § 1326(a)(2) continued to apply and to define the additional responsibilities of the chapter 13 trustee post-con-

version. It noted that the Third Circuit's decision in *In re Michael,* 699 F.3d at 310, specifically allowed for the payment of administrative expenses from undistributed plan payments when the chapter 13 case was converted prior to plan confirmation. *In re Brandon,* 537 B.R. at 236.

It is hard to ignore, however, the *Harris* court's sweeping statement that "no chapter 13 provision holds sway" after conversion. *In re Harris,* 135 S.Ct. at 1838. The Supreme Court expressly rejected the trustee's argument that the second sentence of § 1326(a)(2)—requiring the trustee to distribute payments in accordance with the plan if a plan has been confirmed—authorized her to pay the undistributed funds to Harris' creditors after conversion. If the second sentence of 1326(a)(2), and no other chapter 13 provision "holds sway" after conversion, then how can the Court apply *Harris* to allow payment in accordance with the third sentence of § 1326(a)? In fact, since *Harris,* all but one of the reported decisions addressing this issue have held that the language and the reasoning of *Harris* is broad enough to encompass the situation where a case is converted prior to confirmation and the debtor's attorney seeks payment of her chapter 13 fees. *See In re Vonkreuter,* 545 B.R. 297 (Bankr.D.Colo. 2016); *In re Marshall,* 2016 WL 402386 (Bankr. W.D.La. January 28, 2016); *In re Beckman,* 536 B.R. 446 (Bankr. S.D.Cal. 2015); *In re Spraggins,* 2015 WL 5227836 (Bankr.D.N.J. September 4, 2015); *In re Sowell,* 535 B.R. 824 (Bankr.D.Minn.2015); *In re Beauregard,* 533 B.R. 826 (Bankr. D.N.M.2015). The Court finds the reasoning in these decisions to be more persuasive, especially the thoughtful analysis in the *Beauregard* decision.

Nevertheless, the Court agrees with the Debtor that the pre-confirmation status of this case is significant. The third sentence

of § 1326(a)(2) is only triggered with the denial of confirmation. In that event, one of two things will happen. Either the case will be dismissed or it will be converted. If it is dismissed, then this third sentence authorizes and directs the chapter 13 trustee to carve-out the administrative payments before remittance to the debtor. Although not explicitly stated, that is not the case with conversion, although at first blush it may be difficult to understand why the chapter 13 trustee would be permitted to carve-out payment of administrative claims in the event of dismissal but not in the event of a conversion. The answer lies in the difference between dismissal and conversion.

With dismissal, every creditor's rights against the debtor remain intact, unaffected by the prior bankruptcy filing. And yet the administrative claimant is supposed to enjoy priority status over the pre-petition claims. This priority status would not occur following dismissal absent the protection afforded the administrative claimant in this statute. On the other hand, with conversion, the administrative claimant will continue to enjoy its priority treatment over the pre-petition creditors, with one exception. Section 726(b) states that the administrative claims arising from a reorganization case, such as a chapter 13 proceeding, will be subordinated to the chapter 7 administrative claims. Without § 726(b)'s subordination provision, there would often be no funds in the estate to cover the "burial expenses." In this latter statute, Congress has expressed its intent to prefer the chapter 7 administrative claimant over the chapter 13 (or chapter 11) administrative claimant. But if the chapter 13 trustee were allowed to pay the chapter 13 administrative expenses before remitting funds to the chapter 7 trustee, then § 726(b) would be rendered meaningless.

Admittedly, the chapter 7 estate following conversion will not include funds that can be traced to the debtor's post-petition wages. Thus, for all practical purposes, in the typical case there may be little or nothing left to pay chapter 7 administrative expenses, let alone those of the chapter 13 case. Except in cases of "bad faith conversion," § 348(f) mandates this result. This exclusion of property from the chapter 7 estate is not limited to wages alone, but extends to all post-petition assets, except as expressly provided otherwise in § 541(a). *See* 11 U.S.C. § 541(a)(3), (5)–(7).

In *Harris*, the Supreme Court did not specifically address payment of an allowed § 503(b) administrative expense. Counsel argues that the payment of an administrative expense is different from a payment to "creditors." A claimant with an allowed § 503(b) administrative expense claim does not fall within the definition of a "creditor" in § 101(10). The Supreme Court did not appear to use the term "creditor" in this technical sense, or give any indication that it intended to distinguish between payments to "creditors" from payments to administrative expense claimants. Rather, the Court appeared to use the term more broadly to refer to all those entitled to receive distributions of plan payments. And the Court's ruling was unequivocal that the trustee's authority to make plan payments ended at conversion. At that point the chapter 13 trustee could only remit "property of the estate" to the chapter 7 trustee. This property, however, would not include post-petition wages.

The Court is mindful that its ruling creates a very real hardship for attorneys representing chapter 13 debtors. These professionals provide vital services, helping debtors save their homes and cars from collection action, helping them obtain a broader discharge of debts, and an af-

fordable payment plan for priority claims. With the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress signaled loud and clear its strong preference for debtors to file chapter 13 cases. It now needs to consider a legislative fix to protect hardworking attorneys, like Counsel in this case, who make the chapter 13 system possible. Until it does, however, this Court is constrained to enforce the Code as it is written and to follow the Supreme Court's interpretation of it.

## III. CONCLUSION

For all of the foregoing reasons, it is hereby

ORDERED that Counsel's request for payment of her allowed administrative expense claim from undistributed plan payments held by the Trustee is DENIED.