**IN RE: Ashley L. IVEY, Debtor.**

**Case No. 4:15–bk–10300**

United States Bankruptcy Court,
E.D. Arkansas,
**Little Rock Division.**

Signed 03/21/2017

Lyndsey D. Dilks, Dilks Law Firm, Little Rock, AR, for Debtor.

## ORDER ON MOTION REQUESTING ALLOWANCE OF ADMINIS- TRATIVE CLAIM

Phyllis M. Jones, United States Bankruptcy Judge

Before the Court is a *Motion Requesting Allowance of Administrative Claim and Notice of Opportunity to Object ("Motion")* filed on November 25, 2015, by Lyndsey Dilks, the former attorney of Ashley Ivey, the Debtor in this bankruptcy case ("**Debtor**"). Jack Gooding, the Chapter 13 Standing Trustee ("**Trustee**"), subsequently filed the *Trustee's Response to Motion Requesting Allowance of Administrative Claim ("Response")* on December 17, 2015, and *Brief in Support of Trustee's Response* ("**Brief in Support of Response**") on February 1, 2016.

Dilks filed the *Motion* two days after the Debtor, through other counsel, filed a notice of conversion from Chapter 13 to Chapter 7. No plan of reorganization was confirmed while the case was pending under Chapter 13. In the *Motion*, Dilks requests that the Trustee pay her previously approved compensation of $3000.00 in attorney fees and $86.00 in additional expenses pursuant to 11 U.S.C. §§ 330 and 503(b) for services performed in regard to the Chapter 13 case. Further, Dilks asks that her fees and expenses be remitted to her from the Debtor's postpetition payments to the Trustee and that the payment be distributed to her prior to any refund to the Debtor. The Trustee raised a number of objections to allowance of the fees and payment from the Debtor's refund, each of which will be addressed below.

A hearing was held on the *Motion* and *Response*. At the conclusion of the hearing,

the Court took the matter under advisement. For the reasons stated in this Order, the *Motion* is denied.

### JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 9014 and 7052.

### FINDINGS OF FACT

The parties presented the facts underlying the dispute through a series of exhibits, stipulations, and the testimony of Dilks.[1] On December 8, 2014, prior to the Debtor's bankruptcy filing, the Debtor and Dilks signed a document titled *Chapter 13 Bankruptcy Fee Agreement and Client's Rights & Responsibilities ("Fee Agreement")*. On January 20, 2015, the Debtor, represented by Dilks, filed for relief under the provisions of Chapter 13 of the Bankruptcy Code. Gooding was appointed the Chapter 13 Trustee.

On May 1, 2015, pursuant to the *Guidelines for Compensation for Services Rendered and Reimbursement of Expenses in Chapter 13 Cases* and the *Revised Guidelines* (collectively, the "*Guidelines*"), Dilks filed an *Application for Attorney Fee ("Short Form Fee Application")*. The *Short Form Fee Application* was signed by both Dilks and the Debtor. It reflected that Dilks applied for a summary fee of $3000.00 for services rendered or to be rendered to complete the plan. Pursuant to the *Guidelines*, this *Short Form Fee Ap-*

---

1. Arkansas Rule of Professional Conduct 3.7 forbids a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a witness unless "the testimony relates to the nature and value of legal services rendered in the case." ARK. RULES OF PROF'L CONDUCT R. 3.7(a)(2) (2015). Here, the issue is the payment of attorney fees and the exception applies. Moreover, Dilks was not counsel of record for the Debtor at the time of the hearing.

*plication* was not noticed to all creditors but only to the Debtor and the Trustee. The summary fee awarded pursuant to the *Guidelines* was first payable in part upon confirmation of the plan, with the remainder to be paid from the amount disbursed to creditors each month.

On May 11, 2015, the Trustee filed an objection to the *Short Form Fee Application ("Objection")*, along with a notice of opportunity to respond within thirty days. With no response from any party, an agreed order (*"Agreed Order"*) was entered sustaining the Trustee's *Objection* on July 31, 2015. Both Dilks and the Trustee signed the *Agreed Order* in which the Court approved the requested fees of $3000.00.

After the *Agreed Order* was entered, Dilks filed an additional application on August 7, 2015, for reimbursement of expenses, which included $56.00 for service to creditors and $30.00 for costs incurred to add a creditor to the case. The Court approved the additional expenses by an order dated August 31, 2015.

On November 23, 2015, after Dilks's fee and expense applications were approved but prior to confirmation of the Debtor's Chapter 13 plan, James O. Wyre filed a motion to be substituted as the attorney for the Debtor in the case (*"Motion to Substitute"*). The *Motion to Substitute* included a certificate of service stating that it had been served on the same day by electronic case filing on the Trustee and the Dilks Law Firm.

Wyre also filed a *Notice to Convert Chapter 13 to Chapter 7 ("Notice of Conversion")* on November 23, 2015. Notice of the *Notice of Conversion* and the order granting were transmitted electronically to Dilks, the Trustee, and others on November 24, 2015.

On November 25, 2015, an order granting the *Motion to Substitute* was entered on the docket. On the same day, Dilks filed the instant *Motion* with notice of a potential hearing, and it was electronically transmitted to the Trustee and the United States Trustee, and sent by United States Mail to the Debtor.

As of November 25, 2015, the date of the filing of the *Motion*, the Trustee held postpetition wages of the Debtor. On December 1, 2015, the Trustee issued a check made payable to the Debtor in the sum of $6,089.08. This check was remitted directly to the Debtor. After issuing the December 1, 2015 check to the Debtor, the Trustee received additional postpetition wages, and those additional postpetition wages were also remitted to the Debtor by the Trustee.

Dilks testified that she performed a substantial amount of legal work for the Debtor. The Trustee did not dispute that she performed the services for which she requested compensation.

The Debtor has not objected to the allowance of fees that are requested in the *Motion*. There is no dispute that the conversion was voluntary and no allegation that the Debtor sought conversion of the case in bad faith. After conversion, on February 1, 2016, the Chapter 7 Trustee docketed his *Report of No Distribution* with a text entry on the docket reflecting that there is no property available for distribution.

### ARGUMENTS

Dilks's Arguments. At the hearing, Dilks orally moved that the Trustee's *Response* be stricken as untimely because it was filed more than twenty-one days from the date of the *Motion*. Second, she contended that she was due her approved attorney fees and expenses pursuant to the provisions in her *Fee Agreement* with the Debt-

or. Finally, she urged the Court to find the Supreme Court's opinion in *Harris v. Viegelahn*, —— U.S. ——, 135 S.Ct. 1829, 191 L.Ed.2d 783 (2015) inapplicable to the case at hand, as did the court in *In re Brandon*, 537 B.R. 231 (Bankr. D. Md. 2015), and to award her an administrative expense claim for the $3000.00 in fees and $86.00 in approved expenses. She argued that because she had not received any payment for the substantial work she performed for the Debtor, her fees and expenses should be paid in full to her from the funds on hand with the Trustee prior to any refund to the Debtor.

Trustee's Arguments. In his *Response* and *Brief in Support of Response*, the Trustee seeks denial of the *Motion* on several bases, each of which is contested by Dilks. The Trustee's principal objection to the allowance and payment of the fees is based on the Supreme Court's *Harris* opinion. The Trustee argues that under *Harris* once the Chapter 13 case converted to Chapter 7, the Trustee was required to return the funds on hand directly to the Debtor, preempting any payment to Dilks for an administrative expense claim. Additionally, the Trustee asserts that the *Motion* was untimely and that Dilks failed to give proper notice of the *Motion* to all interested parties, including the Trustee. He further contended at the hearing that the parties' *Agreed Order* preempted payment to Dilks as she agreed in the order that in the event the Chapter 13 case was converted, she would not be paid her attorney fees from the Debtor's refund.

The Court will begin with Dilks's arguments.

## CONCLUSIONS OF LAW

### A. Dilks's Motion to Strike

■ As a preliminary matter, the Court will address Dilks's oral motion to strike the Trustee's *Response* as untimely. The Trustee filed his *Response* only one day past the twenty-one day objection period provided in the notice of opportunity to object. Dilks failed to show how she was prejudiced by this one-day delay, and the motion to strike is accordingly denied. *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992) (concluding trial court had discretion to consider tardy response when no prejudice was indicated).

### B. Fee Agreement between the Debtor and Dilks

■ Dilks also argued at the hearing that her *Fee Agreement* with the Debtor contains a limited power of attorney, the implication being that this part of the agreement should be enforceable against the Trustee with regard to the Debtor's refund check. As relevant on this point, the *Fee Agreement* between Dilks and the Debtor includes the following provision:

> In the event Client's Chapter 13 case is dismissed or converted to another Chapter, Client grants Attorney a limited power of attorney to apply funds on hand with the Chapter 13 Trustee that would otherwise be forwarded to Client or others towards the balance of Client's Chapter 13 fee ... by granting to Attorney the right to endorse Client's name(s) upon checks from the Trustee.

(Ex. B, Part VII).

This provision assumes that the Trustee will send the Debtor's refund check to Dilks, thus enabling the attorney to endorse the Debtor's name on the check, acquire her fees pursuant to the *Fee Agreement*, and remit the remaining balance of the refund to the Debtor. However, if the Trustee does not send the Debtor's refund check to Dilks, no provision of the *Fee Agreement* between Dilks and the Debtor gives Dilks an avenue to acquire

her fees. Here, the Trustee did, in fact, send the refunds directly to the Debtor.

Moreover, the Trustee questions whether he is bound by this provision in the *Fee Agreement* when he was not a party to the agreement between Dilks and the Debtor entered prior to the bankruptcy filing. The Court must agree. The Trustee was not a party to the *Fee Agreement*, and in particular, Dilks offered no evidence that the Trustee was made aware of the existence of the power of attorney provision prior to the *Motion* having been filed or that the *Fee Agreement* between Dilks and the Debtor was binding on the Trustee for some other reason. In short, the *Fee Agreement* between Dilks and the Debtor fails to support Dilks's argument that the Trustee is required to pay her pre-confirmation fees from the Debtor's refund. Dilks's argument on this point must fail.

### C. *Harris v. Viegelahn*

Dilks's remaining argument is that she should be awarded an administrative expense, to be paid from funds on hand with the Trustee, pursuant to the holding of *In re Brandon*, 537 B.R. 231 (Bankr. D. Md. 2015), which distinguished the Supreme Court's ruling in *Harris v. Viegelahn*, — U.S. —, 135 S.Ct. 1829, 191 L.Ed.2d 783 (2015) in cases converted prior to plan confirmation.

The Trustee argues the Supreme Court's ruling in *Harris* is applicable to cases converted both prior to and following confirmation of a Chapter 13 debtor's plan. The Trustee argues that once this case was converted to Chapter 7 he was required to return any undistributed postpetition wages on hand to the Debtor. Addressing the parties' arguments requires an analysis of both *Harris* and *Brandon*.

Unlike the present case that was converted to a Chapter 7 case prior to plan confirmation, the *Harris* case involved a Chapter 13 case that converted to Chapter 7 after plan confirmation. In *Harris*, the Supreme Court held that payments the debtor made to the Chapter 13 trustee from his postpetition wages that remained undistributed at the time the case converted to Chapter 7 must be returned to the debtor and not distributed to creditors. In reaching this conclusion the Supreme Court began with the following observation:

> Conversion from Chapter 13 to Chapter 7 does not commence a new bankruptcy case. The existing case continues along another track, Chapter 7 instead of Chapter 13, without "effect[ing] a change in the date of the filing of the petition." § 348(a). Conversion, however, immediately "terminates the service" of the Chapter 13 trustee, replacing her with a Chapter 7 trustee. § 348(e).

*Harris*, 135 S.Ct. at 1836.

The Court went on to state that "§ 348(f)(1)(A) provides that in a case converted from Chapter 13, a debtor's postpetition earnings and acquisitions do not become part of the new Chapter 7 estate . . . ." *Id.* at 1837. As stated in *Harris*, this section "makes one thing clear: A debtor's postpetition wages, including undisbursed funds in the hands of a trustee, ordinarily do not become part of the Chapter 7 estate created by conversion." *Id.* The Court reasoned that "[a]bsent a bad-faith conversion, § 348(f) limits a converted Chapter 7 estate to property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed. Postpetition wages, by definition, do not fit that bill." *Id.*

Upon conversion to Chapter 7, the services of the Chapter 13 trustee are terminated, and the provisions of Chapter 13 no longer apply. *Id.* at 1838. The Court in *Harris* stated, "A core service provided by a Chapter 13 trustee is the disbursement

of 'payments *to creditors.*' § 1326(c) (emphasis added). The moment a case is converted from Chapter 13 to Chapter 7, however, the Chapter 13 trustee is stripped of authority to provide that 'service.' § 348(e)." *Id.* The Court recognized that once terminated, the trustee is not required by Section 348(e) to hold funds in perpetuity, but stated the trustee must instead "return undistributed postpetition wages to the debtor." *Id.*

In reaching its conclusion, the Supreme Court rejected the Chapter 13 trustee's argument that she could distribute funds to creditors because Section 1327(a) provides that a confirmed plan is binding on the parties, and the second sentence of Section 1326(a)(2) instructs the trustee to distribute payments in accordance with the plan. *Id.* The Supreme Court held those provisions "had no force here, for they ceased to apply once the case was converted to Chapter 7." *Id.* The Court went on to state, "[w]hen a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway," citing to Section 103(i) of the Bankruptcy Code, which provides that "Chapter 13 ... applies only in a case under [that] chapter." *Id; see also* 11 U.S.C. § 103(i) (2012).

The Supreme Court also disagreed with the trustee's argument that upon conversion the trustee still had a duty to wind up the affairs of the Chapter 13 estate. The Supreme Court explained that Rule 1019 of the Federal Rules of Bankruptcy Procedure specifies the trustee's post-conversion duties, which are to turn over records and assets to the Chapter 7 trustee and to file a report with the United States Trustee. *Id.* at 1839 (citing Fed. R. Bankr. P. 1019(4) & 1019(5)(B)(ii)). Those duties do not include distributing funds to creditors. *Id.*

This Court acknowledges the facts in *Harris* are distinguishable from the facts

of the present case. *Harris* involved conversion to Chapter 7 *after* instead of prior to confirmation of the plan and involved distributions to *creditors* instead of distributions to attorneys for compensation for fees and costs as administrative expenses. However, research has found that substantially all courts faced with the issue of whether a Chapter 13 trustee may pay administrative expense claims in a case converted prior to confirmation have followed the reasoning in *Harris* to answer that question in the negative. *See In re Hoggarth,* 546 B.R. 875, 880 (Bankr. D. Colo. 2016) (denying attorney's request for balance of administrative expense claim to be paid from postpetition wages on hand at conversion in case converted to Chapter 7 from Chapter 13 prior to confirmation); *In re Vonkreuter,* 545 B.R. 297, 303 (Bankr. D. Colo. 2016) (holding that *Harris* applies in cases converted pre-confirmation and "allowed administrative expense claims under § 503(b) may not be paid from undistributed postpetition earnings"); *In re Harris,* No. 15-12618-JDW, 2016 WL 3517757, at *3 (Bankr. N.D. Miss. Feb. 1, 2016) (denying application for administrative expense claim and holding *Harris* prohibits a Chapter 13 trustee from paying administrative expenses when case converts to Chapter 7 prior to confirmation); *In re Beckman,* 536 B.R. 446, 450 (Bankr. S.D. Cal. 2015) (holding in case converted pre-confirmation trustee cannot use funds on hand at conversion from debtor's postpetition wages to pay adequate protection creditors, nor can he "deduct attorney's fees (or his administrative commission) from these funds"); *In re Spraggins,* Nos. 13–28807–ABA, 14–29130–ABA & 14–35351–ABA, 2015 WL 5227836, at *2 (Bankr. D.N.J. Sept. 4, 2015) (holding trustee must refund to debtor all postpetition wages on hand at conversion even if case converted prior to confirmation and unpaid attorney fees, whether no-look fees or not,

cannot be deducted from funds prior to refund); *In re Sowell*, 535 B.R. 824, 827 (Bankr. D. Minn. 2015) (denying attorney's request to include directive in order for Chapter 13 trustee to tender funds to debtor's attorney from funds on hand after pre-confirmation conversion of case); *In re Beauregard*, 533 B.R. 826, 832 (Bankr. D.N.M. 2015) (holding funds from postpetition wages held by former Chapter 13 trustee cannot be used to pay administrative expenses but must be returned to the debtor regardless of whether plans were confirmed or unconfirmed at the time of conversion).

In support of her interpretation of *Harris*, Dilks urges the Court to adopt the holding of *In re Brandon*, 537 B.R. 231 (Bankr. D. Md. 2015). In *Brandon*, a debtor's Chapter 13 case was converted to Chapter 7 *prior to* confirmation, and counsel for the debtor sought allowance of attorney fees and payment of those fees from the postpetition wages held by the Chapter 13 trustee at the time of conversion. *Id.* at 233. The *Brandon* court saw a distinction between the treatment by Section 1326(a)(2) of a confirmed plan and an unconfirmed plan as provided by the second and third sentences of Section 1326. *Id.* at 236. The court reasoned that a case with a confirmed plan is governed by the second sentence that provides the trustee shall distribute payments in accordance with a confirmed plan. *Id.* Further, a case where no plan has been confirmed is governed by the third sentence (providing that if a plan is not confirmed, the trustee shall return payments to the debtor, after deducting any unpaid claim allowed under Section 503(b)). *Id.* The court in *Brandon* held that the holding in *Harris* was inapplicable in its case because a plan had not been confirmed at the time of conversion. *Id.* at 237. Consequently, the trustee's "post-conversion responsibilities continue to include compliance with the third sen-

tence of § 1326(a)(2) requiring the payment of administrative expenses such as the remaining allowed fee of debtor's counsel prior to returning unpaid funds to a debtor." *Id.* at 236.

This Court declines to follow the *Brandon* court for in doing so it would ignore the holding in *Harris* that "no Chapter 13 provision holds sway" after conversion. *Harris*, 135 S.Ct. at 1838. Instead, this Court agrees and joins with the courts in *In re Sowell* and *In re Beauregard* in finding that the analysis and conclusions reached by the Supreme Court in *Harris* apply in a case converted prior to plan confirmation. *In re Sowell*, 535 B.R. at 826 (*Harris* applies with "equal force" to a case converted prior to confirmation); *In re Beauregard*, 533 B.R. at 831 (*Harris* means that funds must be returned to debtor upon conversion prior to confirmation). Indeed, there is "no principled basis upon which to continue to give effect to the third but not the second sentence of § 1326(a)(2)." *In re Beauregard*, 533 B.R. at 831.

In *Harris* the Supreme Court recognized Congressional intent to protect postpetition earnings as evidenced by Section 348(f) and to terminate the services of Chapter 13 trustees upon conversion. It follows that upon conversion from Chapter 13 to Chapter 7 the debtor's funds are protected, the trustee's services are terminated, the provisions of Chapter 13 no longer govern. Therefore, the trustee's wind up duties cannot include compliance with the third sentence of Section 1326(a)(2) or any other services governed by Chapter 13 provisions.

For these reasons, the Court finds that upon conversion from Chapter 13 to Chapter 7 all undistributed funds that were on hand with the Trustee that were paid from the Debtor's postpetition wages must be

returned to the Debtor. Dilks's request for payment of her attorney fees and expenses from funds on hand following conversion is denied.

This does not end the inquiry, however, as Dilks has requested not just payment of, but also allowance of, fees and expenses as an administrative expense claim. While under *Harris*, the Court finds that any such administrative expense could not be paid from the funds on hand with the Trustee at the time of conversion, the Court must nevertheless evaluate whether Dilks should be awarded an administrative expense claim in the case that is now proceeding under the provisions of Chapter 7 of the Bankruptcy Code.

### D. Trustee's Arguments against Allowance of the Administrative Claim

In his *Response*, the Trustee raises two procedural objections to the allowance of Dilks's administrative claim: (1) that the *Motion* was untimely filed; and (2) that the *Motion* was not properly noticed under the applicable rule.

■ Timeliness of the *Motion*. As to the first issue, Federal Rule of Bankruptcy Procedure 1019(6) provides in relevant part, "A request for payment of an administrative expense incurred before conversion of the case is timely filed under § 503(a) of the Code if it is filed before conversion or a time fixed by the court." FED. R. BANKR. P. 1019(6). It is undisputed the *Motion* was not filed prior to conversion of this case.

However, the Rule specifically provides that the Court may fix a different deadline for filing an administrative expense claim when a case is converted. Moreover, Section 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file a request for payment of an administrative expense, *or may tardily file such request*

*if permitted by the court for cause.*" 11 U.S.C. § 503(a) (2012) (emphasis added). "Cause" for the court to allow a tardy request for payment of attorney fees is not defined by Rule 1019 or Section 503. 4 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY 294–45 (3d ed. 2000 & Supp. 2004).

At least one bankruptcy court has found cause to allow the filing of a request for payment of administrative expense after a conversion from Chapter 13 to Chapter 7 has occurred. *See In re Simmons*, 286 B.R. 426, 430 (Bankr. D. Kan. 2002) (deciding request for attorney fees filed after conversion should be considered timely because changes in the court's procedures misled debtors' counsel, who would have otherwise filed her fee request prior to conversion).

In the instant case, the evidence plainly demonstrates that filing her *Motion* prior to the *Notice of Conversion* in compliance with Rule 1019 was beyond Dilks's control. Dilks was unaware the Debtor retained other counsel to represent her in this case, and Wyre filed the *Notice of Conversion* on the same day he filed the *Motion to Substitute*. Indeed, no order substituting Wyre as counsel for the Debtor had been entered when he filed the *Notice of Conversion*. Under such circumstances, the Court finds cause to deem the *Motion* timely under the Rule. The Trustee's argument against allowance of Dilks's administrative claim as being untimely must fail.

■ Notice of the *Motion*. The second issue raised by the Trustee is whether the *Motion* was procedurally defective because Dilks failed to comply with the notice requirements of Federal Rule of Bankruptcy Procedure 2002(a)(6). Rule 2002(a)(6) provides:

[T]he clerk, or some other person as the court may direct, shall give the debtor, the trustee, and all creditors and inden-

ture trustees at least 21 days' notice by mail of ... a hearing on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000.

FED. R. BANKR. P. 2002(a)(6). At the hearing, Dilks responded that the electronic notice she provided constituted effective service of the *Motion* under Federal Rule of Bankruptcy Procedure 9014, which is applicable to contested matters and governs the required notice in this instance.

In her *Motion*, Dilks proceeds under Sections 330(a) and 503(b) of the Bankruptcy Code. Section 330 is the statutory authority for compensating a debtor's attorney for services performed in a Chapter 13 case from the bankruptcy estate created under Section 1306(a) of the Bankruptcy Code. 11 U.S.C. § 330(a)(4)(B) (2012). Section 503(b)(2) authorizes, after notice and a hearing, the allowance of such compensation and reimbursement as an administrative expense. 11 U.S.C. § 503(b)(2) (2012). Although Dilks moves for her "approved compensation" to be deemed an administrative expense in her *Motion*, in reality the *Motion* constituted a new request for fees and expenses and a request that those fees and expenses be deemed an administrative expense. Dilks's prior *Short Form Fee Application* was approved as a summary compensation award under the

*Guidelines*, locally known as a "short form" application, but was payable only upon confirmation of the Chapter 13 plan, an event that never occurred.[2] Because confirmation never occurred, the fees awarded pursuant to Dilks's *Short Form Fee Application* could no longer be paid or elevated to administrative expense status. Dilks, therefore, had to request payment of the fees and expenses that accrued preconfirmation anew. This could only be done with the "long form" application, both because confirmation would never occur, and because the *Guidelines* provide that the Trustee will recommend approval of only one summary compensation award, which Dilks had already received with her *Short Form Fee Application.*

Dilks's *Motion* therefore, had to conform to the "long form" requirements. Under the *Guidelines*, "[a]n attorney seeking interim or final compensation for services or reimbursement of necessary expenses from an estate in a Chapter 13 case shall file an application as set forth in Federal Rule of Bankruptcy Procedure 2016."[3] (Ex. I, Guideline 1). Requests for compensation under Rule 2016 in excess of $1000.00 must be noticed pursuant to Rule 2002(a)(6). 9 COLLIER ON BANKRUPTCY ¶ 2016.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

---

**2.** The *Guidelines* provide two methods for counsel to seek compensation from the Chapter 13 estate. The first method is the "long form," which requires attorneys to file an application as set forth in Rule 2016 of the Federal Rules of Bankruptcy Procedure. The second is known as the "short form," which allows for a "summary compensation award of fees and costs in a Chapter 13 case for the service through confirmation of the plan." (Ex. I, Guideline 2). The summary compensation award is paid in part upon confirmation of the plan, and thereafter "at the rate not to exceed twenty-five percent (25%) from the total amount disbursed to creditors each month." (Ex. I, Guideline 4). The Chapter 13

Trustee will only recommend approval of one "summary compensation award" for the services and fee rates encompassed by the "short-form" application. (Ex. I, Guideline 6). Fees sought under the "short form" application are awarded "summarily" and "without notice." (Ex. I, Guidelines 2, 7).

**3.** Federal Rule of Bankruptcy Procedure 2016(a) details the requirements for a proper request for compensation and reimbursement. The Court will not address whether the *Motion* itself complied with the requirements of Rule 2016, as it was not raised by the parties at the hearing.

Courts apply Rule 2002(a)(6) in circumstances similar to those in the instant case, where a debtor's counsel seeks compensation and/or expense reimbursement under Sections 330 and 503, the same statutes relied upon by Dilks. *See, e.g., In re Garris,* 496 B.R. 343, 354–55 (Bankr. S.D.N.Y. 2013) (court ordered Chapter 13 debtor's attorney, after case dismissal, to provide notice under Rule 2002(a)(6) of his request for compensation or reimbursement of expenses exceeding $1000.00 under Sections 330 and 503); *In re Jordan,* No. 99-20073-13, 2000 WL 33712290, at *2 (Bankr. D. Idaho Mar. 24, 2000) (recognizing that Chapter 13 counsel seeking fee allowance under Sections 330 and 503(b)(2) after case was dismissed must provide clear notice to debtor, creditors, United States Trustee, and trustee under Rule 2002(a)(6) (citing *In re Barrera,* No. 98-02092, 1999 WL 33486717, at *2 n.4 (Bankr. D. Idaho May 7, 1999))).

The *Motion* contained a notice giving parties twenty-one days to object and providing that if objections were filed, a hearing would be set by subsequent notice, but if no objections were filed, the *Motion* may be granted without further notice or hearing. (*Motion* at 2). Dilks thus complied in part with Rule 2002(a)(6). Unfortunately however, the *Motion* with notice of a potential hearing was not served on all creditors as provided in Rule 2002(a)(6), but was instead served only upon the Trustee, the United States Trustee, and the Debtor. Dilks did not, therefore, fully comply with Rule 2002(a)(6).

Despite her argument to the contrary, Dilks was not excused from compliance with Rule 2002(a)(6) by Rule 9014. Dilks argued that the *Motion* was properly served and noticed under Rule 9014, but that Rule, by its own terms, applies only to contested matters "not otherwise governed" by the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 9014(a). As stated above, the Court finds that Rule 2002(a)(6) governs and expressly sets out the procedure for giving notice of a hearing regarding compensation and reimbursement. Even though other aspects of the *Motion* may be governed by Rule 9014, notice is governed by Rule 2002(a)(6).

■ The Court concludes that the Trustee proved Dilks did not comply with Rule 2002(a)(6) in serving all creditors. The failure to comply with Rule 2002(a)(6) would not ordinarily be fatal to the *Motion* because under the circumstances of this case the Court would give Dilks the opportunity to re-notice the proper parties in the manner outlined in Rule 2002(a)(6). However, in this case, allowing the fee and allowing it as an administrative expense upon proper notice would be nothing more than an empty gesture for two reasons. First, under *Harris* Dilks will not be paid her attorney fees from the funds belonging to the Debtor. Second, the Bankruptcy Code specifically provides for treatment, after conversion, of administrative expenses incurred prior to conversion, and that treatment does not favor Dilks's position.

Section 726(b) provides that post-conversion administrative expenses in a Chapter 7 liquidation converted from Chapter 13 have priority over any pre-conversion administrative expense. 11 U.S.C. § 726(b) (2012). Consequently, an administrative expense fee allowed as requested by the *Motion* would be subordinate to the administrative expenses of the pending Chapter 7 case. In the instant case, the Chapter 7 Trustee docketed his *Report of No Distribution* on February 1, 2016, reflecting that there are no Chapter 7 assets with which to pay *any* allowed administrative expenses. Therefore, even if the Court were to grant Dilks's *Motion* despite its procedural defects, the Chapter 7 estate is

devoid of any property available for distribution to administrative claimants. The Court must deny Dilks's request for allowance of administrative expenses due to the circumstances of this case.

This conclusion dispenses with the need for the Court to address the Trustee's final argument and interpret the *Agreed Order* to determine whether Dilks consented to refrain from requesting payment of any administrative expense for attorney fees from the Debtor's refund if the case were converted.

<div align="center">CONCLUSION</div>

The Court is acutely aware that the extension of *Harris* to pre-confirmation cases may result in harsh consequences for bankruptcy attorneys who represent Chapter 13 debtors. Those consequences may, in turn, produce a chilling effect on the availability of attorneys willing to take the risk. Moreover, the Court is sympathetic to Dilks's plight. She performed the services for which she now seeks compensation, but to grant her request to be paid from the Debtor's refund would be to ignore United States Supreme Court precedent that this Court is bound to follow, and no other sources of payment are available to her in the Chapter 7 case.

Therefore, this Court concludes that upon conversion from Chapter 13 to Chapter 7 all undistributed funds on hand with the Chapter 13 Trustee paid from the Debtor's postpetition wages must be returned to the Debtor and Dilks's request for compensation and allowance of administrative expenses must be denied.[4]

For the foregoing reasons, the *Motion Requesting Allowance of Administrative*

*Claim and Notice of Opportunity to Object* is DENIED.

IT IS SO ORDERED.

</div>

---

4. This Order should not be construed as disagreeing with the procedure outlined by *In re Rogers,* 519 B.R. 267 (Bankr. E.D. Ark. 2014), regarding payment of attorney fees as administrative expenses when a Chapter 13 case is dismissed.