(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HARRIS *v.* VIEGELAHN, CHAPTER 13 TRUSTEE

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 14–400.   Argued April 1, 2015—Decided May 18, 2015

Individual debtors may seek discharge of their financial obligations under either Chapter 7 or Chapter 13 of the Bankruptcy Code. In a Chapter 7 proceeding, the debtor's assets are transferred to a bankruptcy estate. 11 U. S. C. §541(a)(1). The estate's assets are then promptly liquidated, §704(a)(1), and distributed to creditors, §726. A Chapter 7 estate, however, does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing. §541(a)(1). Chapter 13, a wholly voluntary alternative to Chapter 7, permits the debtor to retain assets during bankruptcy subject to a court-approved plan for payment of his debts. Payments under a Chapter 13 plan are usually made from a debtor's "future income." 1322(a)(1). The Chapter 13 estate, unlike a Chapter 7 estate, therefore includes both the debtor's property at the time of his bankruptcy petition, and any assets he acquires after filing. §1306(a). Because many debtors fail to complete a Chapter 13 plan successfully, Congress accorded debtors a nonwaivable right to convert a Chapter 13 case to one under Chapter 7 "at any time." §1307(a). Conversion does not commence a new bankruptcy case, but it does terminate the service of the Chapter 13 trustee. §348(e).

   Petitioner Harris, indebted to multiple creditors and $3,700 behind on his home mortgage payments to Chase Manhattan, filed a Chapter 13 bankruptcy petition. His court-confirmed plan provided that he would resume making monthly mortgage payments to Chase, and that $530 per month would be withheld from his postpetition wages and remitted to the Chapter 13 trustee, respondent Viegelahn. Trustee Viegelahn would make monthly payments to Chase to pay down Harris' mortgage arrears, and distribute remaining funds to Harris' other creditors. When Harris again fell behind on his mortgage pay-

ments, Chase foreclosed on his home. Following the foreclosure, Vie-
gelahn continued to receive $530 per month from Harris' wages, but
stopped making the payments earmarked for Chase. As a result,
funds formerly reserved for Chase accumulated in Viegelahn's pos-
session. Approximately a year after the foreclosure, Harris converted
his case to Chapter 7. Ten days after this conversion, Viegelahn dis-
tributed $5,519.22 in Harris' withheld wages mainly to Harris' credi-
tors. Asserting that Viegelahn lacked authority to disburse his post-
petition wages to creditors postconversion, Harris sought an order
from the Bankruptcy Court directing refund of the accumulated wag-
es Viegelahn paid to his creditors. The Bankruptcy Court granted
Harris' motion, and the District Court affirmed. The Fifth Circuit re-
versed, concluding that a former Chapter 13 trustee must distribute
a debtor's accumulated postpetition wages to his creditors.

*Held*: A debtor who converts to Chapter 7 is entitled to return of any
postpetition wages not yet distributed by the Chapter 13 trustee.
Pp. 5–11.

   (a) Absent a bad-faith conversion, §348(f) limits a converted Chap-
ter 7 estate to property belonging to the debtor "as of the date" the
original Chapter 13 petition was filed. Because postpetition wages do
not fit that bill, undistributed wages collected by a Chapter 13 trus-
tee ordinarily do not become part of a converted Chapter 7 estate.
Pp. 5–6.

   (b) By excluding postpetition wages from the converted Chapter 7
estate (absent a bad-faith conversion), §348(f) removes those earnings
from the pool of assets that may be liquidated and distributed to
creditors. Allowing a terminated Chapter 13 trustee to disburse the
very same earnings to the very same creditors is incompatible with
that statutory design. Pp. 7–8.

   (c) This conclusion is reinforced by §348(e), which "terminates the
service of [the Chapter 13] trustee" upon conversion. One service
provided by a Chapter 13 trustee is disbursing "payments to credi-
tors." §1326(c). The moment a case is converted from Chapter 13 to
Chapter 7, a Chapter 13 trustee is stripped of authority to provide
that "service." P. 8.

   (d) Section 1327(a), which provides that a confirmed Chapter 13
plan "bind[s] the debtor and each creditor," and §1326(a)(2), which
instructs a trustee to distribute "payment[s] in accordance with the
plan," ceased to apply once the case was converted to Chapter 7.
§103(i). Sections 1327(a) and 1326(a)(2), therefore, offer no support
for Viegelahn's assertion that the Bankruptcy Code *requires* a termi-
nated Chapter 13 trustee to distribute to creditors postpetition wages
remaining in the trustee's possession. Continuing to distribute funds
to creditors pursuant to a defunct Chapter 13 plan, moreover, is not

Syllabus

one of the trustee's postconversion responsibilities specified by the Federal Rules of Bankruptcy Procedure. Pp. 8–10.

(e) Because Chapter 13 is a voluntary alternative to Chapter 7, a debtor's postconversion receipt of a fraction of the wages he earned and would have kept had he filed under Chapter 7 in the first place does not provide the debtor with a "windfall." A trustee who distributes payments regularly may have little or no accumulated wages to return, while a trustee who distributes payments infrequently may have a sizable refund to make. But creditors may gain protection against the risk of excess accumulations in the hands of trustees by seeking to have a Chapter 13 plan include a schedule for regular disbursement of collected funds. Pp. 10–11.

757 F. 3d 468, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

### No. 14–400

## CHARLES E. HARRIS, III, PETITIONER *v.* MARY K. VIEGELAHN, CHAPTER 13 TRUSTEE

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

### [May 18, 2015]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the disposition of wages earned by a debtor *after* he petitions for bankruptcy. The treatment of postpetition wages generally depends on whether the debtor is proceeding under Chapter 13 of the Bankruptcy Code (in which the debtor retains assets, often his home, during bankruptcy subject to a court-approved plan for the payment of his debts) or Chapter 7 (in which the debtor's assets are immediately liquidated and the proceeds distributed to creditors). In a Chapter 13 proceeding, postpetition wages are "[p]roperty of the estate," 11 U. S. C. §1306(a), and may be collected by the Chapter 13 trustee for distribution to creditors, §1322(a)(1). In a Chapter 7 proceeding, those earnings are not estate property; instead, they belong to the debtor. See §541(a)(1). The Code permits the debtor to convert a Chapter 13 proceeding to one under Chapter 7 "at any time," §1307(a); upon such conversion, the service of the Chapter 13 trustee terminates, §348(e).

When a debtor initially filing under Chapter 13 exercises his right to convert to Chapter 7, who is entitled to post-

petition wages still in the hands of the Chapter 13 trustee? Not the Chapter 7 estate when the conversion is in good faith, all agree. May the trustee distribute the accumulated wage payments to creditors as the Chapter 13 plan required, or must she remit them to the debtor? That is the question this case presents. We hold that, under the governing provisions of the Bankruptcy Code, a debtor who converts to Chapter 7 is entitled to return of any postpetition wages not yet distributed by the Chapter 13 trustee.

## I

### A

The Bankruptcy Code provides diverse courses overburdened debtors may pursue to gain discharge of their financial obligations, and thereby a "fresh start." *Marrama* v. *Citizens Bank of Mass.*, 549 U. S. 365, 367 (2007) (quoting *Grogan* v. *Garner*, 498 U. S. 279, 286 (1991)). Two roads individual debtors may take are relevant here: Chapter 7 and Chapter 13 bankruptcy proceedings.

Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate. §541(a)(1). A Chapter 7 trustee is then charged with selling the property in the estate, §704(a)(1), and distributing the proceeds to the debtor's creditors, §726. Crucially, however, a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing. §541(a)(1). Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a "fresh start" by shielding from creditors his postpetition earnings and acquisitions.

Chapter 13 works differently. A wholly voluntary alternative to Chapter 7, Chapter 13 allows a debtor to retain

his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period. §1306(b), §1322, §1327(b). Payments under a Chapter 13 plan are usually made from a debtor's "future earnings or other future income." §1322(a)(1); see 8 Collier on Bankruptcy ¶1322.02[1] (A. Resnick & H. Sommer eds., 16th ed. 2014). Accordingly, the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing. §1306(a). A Chapter 13 trustee is often charged with collecting a portion of a debtor's wages through payroll deduction, and with distributing the withheld wages to creditors.

Proceedings under Chapter 13 can benefit debtors and creditors alike. Debtors are allowed to retain their assets, commonly their home or car. And creditors, entitled to a Chapter 13 debtor's "disposable" postpetition income, §1325(b)(1), usually collect more under a Chapter 13 plan than they would have received under a Chapter 7 liquidation.

Many debtors, however, fail to complete a Chapter 13 plan successfully. See Porter, The Pretend Solution: An Empirical Study of Bankruptcy Outcomes, 90 Texas L. Rev. 103, 107–111 (2011) (only one in three cases filed under Chapter 13 ends in discharge). Recognizing that reality, Congress accorded debtors a nonwaivable right to convert a Chapter 13 case to one under Chapter 7 "at any time." §1307(a). To effectuate a conversion, a debtor need only file a notice with the bankruptcy court. Fed. Rule Bkrtcy. Proc. 1017(f)(3). No motion or court order is needed to render the conversion effective. See *ibid.*

Conversion from Chapter 13 to Chapter 7 does not commence a new bankruptcy case. The existing case continues along another track, Chapter 7 instead of Chapter 13, without "effect[ing] a change in the date of the filing of the petition." §348(a). Conversion, however,

immediately "terminates the service" of the Chapter 13 trustee, replacing her with a Chapter 7 trustee. §348(e).

## B

In February 2010, petitioner Charles Harris III filed a Chapter 13 bankruptcy petition. At the time of filing, Harris was indebted to multiple creditors, and had fallen $3,700 behind on payments to Chase Manhattan, his home mortgage lender.

Harris' court-confirmed Chapter 13 plan provided that he would immediately resume making monthly mortgage payments to Chase. The plan further provided that $530 per month would be withheld from Harris' postpetition wages and remitted to the Chapter 13 trustee, respondent Mary Viegelahn. Viegelahn, in turn, would distribute $352 per month to Chase to pay down Harris' outstanding mortgage debt. She would also distribute $75.34 per month to Harris' only other secured lender, a consumer-electronics store. Once those secured creditors were paid in full, Viegelahn was to begin distributing funds to Harris' unsecured creditors.

Implementation of the plan was short lived. Harris again fell behind on his mortgage payments, and in November 2010, Chase received permission from the Bankruptcy Court to foreclose on Harris' home. Following the foreclosure, Viegelahn continued to receive $530 per month from Harris' wages, but stopped making the payments earmarked for Chase. As a result, funds formerly reserved for Chase accumulated in Viegelahn's possession.

On November 22, 2011, Harris exercised his statutory right to convert his Chapter 13 case to one under Chapter 7. By that time, Harris' postpetition wages accumulated by Viegelahn amounted to $5,519.22. On December 1, 2011—ten days after Harris' conversion—Viegelahn disposed of those funds by giving $1,200 to Harris' counsel, paying herself a $267.79 fee, and distributing the remain-

ing money to the consumer-electronics store and six of Harris' unsecured creditors.

Asserting that Viegelahn lacked authority to disburse funds to creditors once the case was converted to Chapter 7, Harris moved the Bankruptcy Court for an order directing refund of the accumulated wages Viegelahn had given to his creditors. The Bankruptcy Court granted Harris' motion, and the District Court affirmed.

The Fifth Circuit reversed. *In re Harris*, 757 F. 3d 468 (2014). Finding "little guidance in the Bankruptcy Code," *id.*, at 478, the Fifth Circuit concluded that "considerations of equity and policy" rendered "the creditors' claim to the undistributed funds . . . superior to that of the debtor," *id.*, at 478, 481. Notwithstanding a Chapter 13 debtor's conversion to Chapter 7, the Fifth Circuit held, a former Chapter 13 trustee must distribute a debtor's accumulated postpetition wages to his creditors.

The Fifth Circuit acknowledged that its decision conflicted with the Third Circuit's decision in *In re Michael*, 699 F. 3d 305 (2012), which held that a debtor's undistributed postpetition wages "are to be returned to the debtor at the time of conversion [from Chapter 13 to Chapter 7]." *Id.*, at 307. We granted certiorari to resolve this conflict, 574 U. S. \_\_\_ (2014), and now reverse the Fifth Circuit's judgment.

## II

### A

Prior to the Bankruptcy Reform Act of 1994, courts divided three ways on the disposition of a debtor's undistributed postpetition wages following conversion of a proceeding from Chapter 13 to Chapter 7. Some courts concluded that undistributed postpetition wages reverted to the debtor. *E.g., In re Boggs*, 137 B. R. 408, 411 (Bkrtcy. Ct. WD Wash. 1992). Others ordered a debtor's undistributed postpetition earnings disbursed to creditors pur-

suant to the terms of the confirmed (albeit terminated) Chapter 13 plan. *E.g., In re Waugh*, 82 B. R. 394, 400 (Bkrtcy. Ct. WD Pa. 1988). Still other courts, including several Courts of Appeals, held that, upon conversion, all postpetition earnings and acquisitions became part of the new Chapter 7 estate, thus augmenting the property available for liquidation and distribution to creditors. *E.g., In re Calder*, 973 F. 2d 862, 865–866 (CA10 1992); *In re Lybrook*, 951 F. 2d 136, 137 (CA7 1991).

Congress addressed the matter in 1994 by adding §348(f) to the Bankruptcy Code. Rejecting the rulings of several Courts of Appeals, §348(f)(1)(A) provides that in a case converted from Chapter 13, a debtor's postpetition earnings and acquisitions do not become part of the new Chapter 7 estate:

> "[P]roperty of the [Chapter 7] estate in the converted case shall consist of property of the estate, as of the date of filing of the [initial Chapter 13] petition, that remains in the possession of or is under the control of the debtor on the date of conversion."

In §348(f)(2), Congress added an exception for debtors who convert in bad faith:

> "If the debtor converts a case [initially filed] under chapter 13 . . . in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of the conversion."

Section 348(f), all agree, makes one thing clear: A debtor's postpetition wages, including undisbursed funds in the hands of a trustee, ordinarily do not become part of the Chapter 7 estate created by conversion. Absent a bad-faith conversion, §348(f) limits a converted Chapter 7 estate to property belonging to the debtor "as of the date" the original Chapter 13 petition was filed. Postpetition wages, by definition, do not fit that bill.

## B

With this background, we turn to the question presented: What happens to postpetition wages held by a Chapter 13 trustee at the time the case is converted to Chapter 7? Does the Code require return of the funds to the debtor, or does it require their distribution to creditors? We conclude that postpetition wages must be returned to the debtor.

By excluding postpetition wages from the converted Chapter 7 estate, §348(f)(1)(A) removes those earnings from the pool of assets that may be liquidated and distributed to creditors. Allowing a terminated Chapter 13 trustee to disburse the very same earnings to the very same creditors is incompatible with that statutory design. We resist attributing to Congress, after explicitly exempting from Chapter 7's liquidation-and-distribution process a debtor's postpetition wages, a plan to place those wages in creditors' hands another way.

Section 348(f)(2)'s exception for bad-faith conversions is instructive in this regard. If a debtor converts in bad faith—for example, by concealing assets in "unfair manipulation of the bankruptcy system," *In re Siegfried*, 219 B. R. 581, 586 (Bkrtcy. Ct. Colo. 1998)—the converted Chapter 7 estate "consist[s] of the property of the [Chapter 13] estate *as of the date of conversion*." §348(f)(2) (emphasis added). Section 348(f)(2) thus penalizes bad-faith debtors by making their postpetition wages available for liquidation and distribution to creditors. Conversely, when the conversion to Chapter 7 is made in *good* faith, no penalty is exacted. Shielding a Chapter 7 debtor's postpetition earnings from creditors enables the "honest but unfortunate debtor" to make the "fresh start" the Bankruptcy Code aims to facilitate. *Marrama*, 549 U. S., at 367 (internal quotation marks omitted). Bad-faith conversions apart, we find nothing in the Code denying debtors funds that would have been theirs had the case proceeded under

Chapter 7 from the start. In sum, §348(f) does not say, expressly: On conversion, accumulated wages go to the debtor. But that is the most sensible reading of what Congress did provide.

Section 348(e) also informs our ruling that undistributed postpetition wages must be returned to the debtor. That section provides: "Conversion [from Chapter 13 to Chapter 7] terminates the service of [the Chapter 13] trustee." A core service provided by a Chapter 13 trustee is the disbursement of "payments *to creditors*." §1326(c) (emphasis added). The moment a case is converted from Chapter 13 to Chapter 7, however, the Chapter 13 trustee is stripped of authority to provide that "service." §348(e).

Section 348(e), of course, does not require a terminated trustee to hold accumulated funds in perpetuity; she must (as we hold today) return undistributed postpetition wages to the debtor. Returning funds to a debtor, however, is not a Chapter 13 trustee service as is making "paymen[t] to creditors." §1326(c). In this case, illustratively, Chapter 13 trustee Viegelahn continued to act in that capacity after her tenure ended. Eight days after the case was converted to Chapter 7, she filed with the Bankruptcy Court a document titled "Trustee's Recommendations Concerning Claims," recommending distribution of the funds originally earmarked for Chase to the remaining secured creditor and six of the 13 unsecured creditors. No. 10–50655 (Bkrtcy. Ct. WD Tex., Nov. 30, 2011), Doc. 34. She then acted on that recommendation. She thus provided a Chapter 13 trustee "service," although barred from doing so by §348(e). Returning undistributed wages to the debtor, in contrast, renders no Chapter 13-authorized "service."

## C

Viegelahn cites two Chapter 13 provisions in support of her argument that the Bankruptcy Code *requires* a termi-

nated Chapter 13 trustee "to distribute undisbursed funds to creditors." Brief for Respondent 21. The first, §1327(a), provides that a confirmed Chapter 13 plan "bind[s] the debtor and each creditor." The second, §1326(a)(2), instructs a trustee to distribute "payment[s] in accordance with the plan," and that, Viegelahn observes, is just what she did. But the cited provisions had no force here, for they ceased to apply once the case was converted to Chapter 7.

When a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway. §103(i) ("Chapter 13 . . . applies only in a case under [that] chapter."). Harris having converted the case, the Chapter 13 plan was no longer "bind[ing]." §1327(a). And Viegelahn, by then the *former* Chapter 13 trustee, lacked authority to distribute "payment[s] in accordance with the plan." §1326(a)(2); see §348(e).

Nor can we credit the suggestion that a confirmed Chapter 13 plan gives creditors a vested right to funds held by a trustee. "[N]o provision in the Bankruptcy Code classifies any property, including post-petition wages, as belonging to creditors." *Michael*, 699 F. 3d, at 312–313.

Viegelahn alternatively urges that a terminated Chapter 13 trustee's "duty" to distribute funds to creditors is a facet of the trustee's obligation to "wind up" the affairs of the Chapter 13 estate following conversion. Brief for Respondent 25 (internal quotation marks omitted). The Federal Rules of Bankruptcy Procedure, however, specify what a terminated Chapter 13 trustee must do post-conversion: (1) she must turn over records and assets to the Chapter 7 trustee, Rule 1019(4); and (2) she must file a report with the United States bankruptcy trustee, Rule 1019(5)(B)(ii). Continuing to distribute funds to creditors pursuant to the defunct Chapter 13 plan is not an authorized "wind-up" task.

Finally, Viegelahn homes in on a particular feature of this case.  Section 1327(b) states that "[e]xcept as otherwise provided in the [Chapter 13] plan . . . the confirmation of a plan vests all of the property of the estate in the debtor."  Harris' plan "otherwise provided": It stated that "[u]pon confirmation of the plan, all property of the estate shall not vest in the Debto[r], but shall remain as property *of the estate*."  App. 31 (emphasis added).  That plan language does not change the outcome here.  Harris' wages may have been "property of the estate" while his case proceeded under Chapter 13, but estate property does not become property of creditors until it is distributed to them.  See *Michael*, 699 F. 3d, at 313.  Moreover, the order confirming Harris' plan provided that upon conversion to Chapter 7, "[s]uch property as may revest in the debtor shall so revest."  App. 48.  Pursuant to that provision, property formerly in the Chapter 13 estate that did not become part of the Chapter 7 estate revested in Harris; here, Harris' postpetition wages so revested.

## D

The Fifth Circuit expressed concern that debtors would receive a "windfall" if they could reclaim accumulated wages from a terminated Chapter 13 trustee. 757 F. 3d, at 478–481.  As explained, however, see *supra* at 2–3, Chapter 13 is a voluntary proceeding in which debtors endeavor to discharge their obligations using postpetition earnings that are off-limits to creditors in a Chapter 7 proceeding.  We do not regard as a "windfall" a debtor's receipt of a fraction of the wages he earned and would have kept had he filed under Chapter 7 in the first place.

We acknowledge the "fortuit[y]," as the Fifth Circuit called it, that a "debtor's chance of having funds returned" is "dependent on the trustee's speed in distributing the payments" to creditors.  757 F. 3d, at 479, and n. 10.  A trustee who distributes payments regularly may have

little or no accumulated wages to return. When a trustee distributes payments infrequently, on the other hand, a debtor who converts to Chapter 7 may be entitled to a sizable refund. These outcomes, however, follow directly from Congress' decisions to shield postpetition wages from creditors in a converted Chapter 7 case, §348(f)(1)(A), and to give Chapter 13 debtors a right to convert to Chapter 7 "at any time," §1307(a). Moreover, creditors may gain protection against the risk of excess accumulations in the hands of Chapter 13 trustees by seeking to include in a Chapter 13 plan a schedule for regular disbursement of funds the trustee collects.

*    *    *

For the reasons stated, the judgment of the United States Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*