FILED
United States Court of Appeals
Tenth Circuit

January 19, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

In Re: JULIO CESAR BARRERA;
MARIA DE LA LUZ MORO,

          Debtors.

-----------------------------------

SIMON E. RODRIGUEZ, Chapter 7
Trustee,

          Appellant,

v.

JULIO CESAR BARRERA; MARIA
DE LA LUZ MORO,

          Appellees.

-----------------------------------

NATIONAL CONSUMER
BANKRUPTCY RIGHTS CENTER;
NATIONAL ASSOCIATION OF
CONSUMER BANKRUPTCY
ATTORNEYS,

          Amici Curiae.

No. 20-1376

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE
PANEL OF THE TENTH CIRCUIT
(BAP No. 20-003-CO)**

---

David V. Wadsworth (Lindsay S. Riley, Wadsworth Garber Warner Conrady, Littleton, Colorado, with him on the briefs), Sender Wasserman Wadsworth, Denver, Colorado, for Appellant.

Erik B. Atzbach, Englewood, Colorado, for Appellees.

_____

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **McHUGH**, Circuit Judges.

_____

**TYMKOVICH**, Chief Judge.

_____

Julio Cesar Barrera and Maria de La Luz Moro filed for bankruptcy under Chapter 13 of the Bankruptcy Code hoping to reorganize their assets and finances. Instead of selling most of their assets to obtain an immediate discharge of their debts, they opted to keep their assets, try a reorganization plan to repay creditors, and receive a discharge later. For some time they continued to meet the terms of their reorganization plan. But they changed their minds following the sale of their home, which had appreciated in value significantly since they filed for bankruptcy.

Instead, Barrera and Moro converted their Chapter 13 bankruptcy to a liquidation of their estate under Chapter 7. The Chapter 7 trustee (Trustee) claimed a right to a portion of the proceeds from the sale of the home, including the appreciation that occurred after their Chapter 13 petition was filed. This case is about who is entitled to the proceeds from the sale of the home. Specifically, do the sale proceeds from the real property of the estate belong to the Chapter 7 estate or to the debtors?

To answer this question, we must analyze 11 U.S.C. § 348(f)(1)(A), which states that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion[.]" We conclude this statutory language directs that the sale proceeds from the home belong to the debtors. We therefore AFFIRM the Bankruptcy Appellate Panel.

# I. Background

We first discuss background bankruptcy principles and then turn to the relevant facts.

## A. The Bankruptcy Code

An understanding of a few bankruptcy mechanics is necessary to comprehend this case and our conclusions. Bankruptcy provides "a fresh [financial] start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotations omitted). Debtors can liquidate their assets or promise future income to repay their creditors in exchange for a discharge of their debts. Individuals have two common paths to discharge in the Bankruptcy Code: Chapter 7 and Chapter 13.

In Chapter 7 bankruptcies, debtors give up their property that is not entitled to an exemption in exchange for a discharge of their debts. A trustee liquidates the debtor's pre-petition, non-exempt property and then distributes the proceeds to the debtor's creditors. *See* 11 U.S.C. § 704(a)(1). The debtor receives an immediate discharge and is therefore entitled to keep his future income and any

assets acquired post-discharge. *Id*. § 727. But this often comes at a cost, as the debtor may lose a home and all other non-exempt assets. *See Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015) (recognizing the "steep price" of Chapter 7's immediate discharge, which is that a debtor "must forfeit virtually all his prepetition property").

In Chapter 13 bankruptcies, debtors reorganize their finances and commit future disposable earnings to the repayment of creditors instead of liquidating assets. 11 U.S.C. § 1322(a)(1). The debtor's existing assets—like a house or car—are generally not liquidated; instead, the debtor keeps them. *Id*. § 1325(b). Distribution of the debtor's future disposable earnings to creditors is dictated by a court-approved plan, which typically lasts three to five years. Upon confirmation of the plan, "all of the property of the estate" vests "in the debtor." *Id*. § 1327(b). A discharge is granted only after the debtor successfully completes the plan. *Id*. § 1328. A reorganization is beneficial to both debtors and creditors. Debtors can protect existing assets from liquidation, and creditors are assured they will receive at least as much repayment—and often more—as they would have under Chapter 7. *See id*. § 1325(a)(4), (5); *see also Harris*, 575 U.S. at 514.

Because of the benefits to debtors and creditors stemming from Chapter 13 bankruptcies, Congress has enacted statutes to incentivize debtors to opt for reorganization over liquidation. *See In re Dewsnup*, 908 F.2d 588, 591–92 (10th Cir. 1990). One of these incentives is the non-waivable right of debtors to

convert a Chapter 13 bankruptcy to another chapter at any time. *See* 11 U.S.C. § 1307(a).

Before the Bankruptcy Reform Act of 1994, circuit courts disagreed about whether a debtor's converted Chapter 7 estate included property interests acquired after the Chapter 13 filing but before conversion to another chapter. *Compare In re Bobroff*, 766 F.2d 797 (3d Cir. 1985) (holding Chapter 13 debtor's tort claims that accrued post-petition, pre-conversion were not part of the converted Chapter 7 estate), *with In re Lybrook*, 951 F.2d 136 (7th Cir. 1991) (holding real estate inherited by Chapter 13 debtor post-petition, pre-conversion was part of the converted Chapter 7 estate).

Congress resolved this pre-Bankruptcy Reform Act circuit split by enacting 11 U.S.C. § 348(f) in 1994. This statute provides that conversion from one chapter to another does not start a new bankruptcy case, but instead it transforms the nature of the existing bankruptcy case. *See* 11 U.S.C. § 348(a) (explaining conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief").

The statute also specifically addresses conversions from Chapter 13 to Chapter 7. When a case is converted from Chapter 13 to Chapter 7, "property of the estate in the converted case shall consist of the property of the estate, as of the date of filing of the *petition*, that remains in the possession of or is under the control of the debtor on the date of conversion[.]" *Id*. § 348(f)(1)(A) (emphasis added). In other words, after conversion, the Chapter 7 estate generally consists

of the same interests in property that would have been included in the estate had the debtor originally filed under Chapter 7, so long as the debtor has possession or control of those interests at conversion. But if a debtor converts in bad faith—broadly defined, as we explain below—more of the debtor's interests are included in the converted estate: "[T]he property of the estate in the converted case shall consist of the property of the estate as of the date of *conversion*." *Id*. § 348(f)(2) (emphasis added); *see also Harris*, 575 U.S. at 518.

Those debtors who try a repayment plan, but ultimately fail, are generally no worse off upon a good-faith conversion than if they had originally filed under Chapter 7. And those debtors who convert from Chapter 13 to Chapter 7 in bad faith are punished because their otherwise immune post-petition property interests are available for liquidation and distribution to creditors.

Notwithstanding Congress's apparent attempt to clarify the proper makeup of a converted estate with the enactment of 11 U.S.C. § 348(f), courts have since split on whether property interests acquired post-petition, but pre-conversion are property of the converted estate or of the debtor. This interpretive conflict underlies this appeal.

### B. The Bankruptcy

Julio Cesar Barrera and Maria de La Luz Moro (Debtors) filed for bankruptcy on April 5, 2016. Instead of liquidating their assets in exchange for an immediate discharge via a Chapter 7 bankruptcy, they opted for a Chapter 13

reorganization plan, committing to a long-term repayment plan using future income to pay creditors.

On the petition date, the property of the Chapter 13 bankruptcy estate included real property jointly owned by the Debtors in Highlands Ranch, Colorado. The Debtors included the following information in their schedules:

| | |
|---|---|
| Value of the Property: | $396,606.00 |
| Liens on the Property: | (1) lien in favor of CitiMortgage, Inc. and (2) lien in favor of the U.S. Department of Housing and Urban Development, totaling $336,209.62 |
| Exempt Equity in the Property: | $60,396.38 per the Colorado Homestead Exemption (can claim up to $75,000) |

Because the combination of the liens and the homestead exemption exceeded the value of the house, the Debtors' equity in the house was exempt as of the petition date. In June 2016, the Debtors' Chapter 13 plan was confirmed and all of the property of the estate was revested in the Debtors. *See* 11 U.S.C. § 1327(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."). Following confirmation, the Debtors made monthly cure payments on their mortgage arrears to the Chapter 13 trustee and paid regular mortgage payments directly to CitiMortgage, Inc. in accordance with the confirmed plan.

Time passed, and the value of the Debtors' home increased.  In April 2018, while still complying with the confirmed Chapter 13 plan, the Debtors sold the house for $520,000.  After payment of the liens, taxes, and closing costs, the Debtors pocketed $140,251 in sale proceeds.  About two weeks later, the Debtors filed a notice of voluntary conversion to Chapter 7 under 11 U.S.C. § 1307.  The Debtors also spent some of the proceeds from the sale.  Thus, as of the conversion date, the Debtors retained only $100,700.12 of the sale proceeds in a savings account.

After the Trustee contacted the Debtors about whether the non-exempt portion of the equity should be part of the Chapter 7 bankruptcy estate, the Debtors filed a motion to convert their case back to Chapter 13, which the bankruptcy court denied.  Now stuck in Chapter 7, the Debtors were forced to combat the Trustee's attempts to require them to turn over the non-exempt portion of the house proceeds to the Chapter 7 estate.

### C.  *Procedural History*

The Trustee filed a motion to compel the Debtors to turn over property of the estate, targeting the non-exempt portion of the house proceeds.  To eliminate factual disputes, the Trustee stipulated that the petition-date value of the house equals the value scheduled by the Debtors in their initial Chapter 13 filing ($396,606).  The bankruptcy court denied the Trustee's motion.  The court reasoned that 11 U.S.C. § 348(f)(1)(A) is ambiguous as to what constitutes "property," but based on the legislative history of the statute, it means the

-8-

property of the estate as it existed on the Chapter 13 petition date, with all its attributes, including the amount of equity *that existed on that date*.  Thus, according to the bankruptcy court, "property" in § 348(f)(1)(A) does not include any of the appreciation in value of the house that occurred from the filing of the Chapter 13 petition to the filing of the Chapter 7 conversion.  That value is therefore excluded from the Chapter 7 estate upon conversion.

The Tenth Circuit Bankruptcy Appellate Panel (BAP) affirmed the bankruptcy court's denial of the Trustee's motion for similar reasons.

## II.  Analysis

We must interpret 11 U.S.C. § 348(f)(1)(A) to determine whether the sale proceeds from the appreciation in value of a debtor's property after filing a Chapter 13 petition but before converting the bankruptcy to Chapter 7 is property of the Chapter 7 estate or the debtor.  We conclude it is property of the debtor.

Our review of this statutory interpretation question is de novo.  *See In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018).  We start with the statutory language and look to the plain meaning of 11 U.S.C. §§ 348 and 541.  Section 348(f)(1)(A) explains that "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition*, that remains in the possession of or is under the control of the debtor on the date of conversion[.]"  (Emphasis added).

Section 348(f)(1)(A)'s explicit reference to "property of the estate" is defined in § 541 to include "all legal or equitable interests of the debtor in

-9-

property[.]"  11 U.S.C. § 541(a)(1).  It also defines "property of the estate" to include "[p]roceeds . . . from property of the estate."  *Id*. § 541(a)(6).  If proceeds were the same interest as the anchor legal or equitable interest, the inclusion of § 541(a)(6) would be redundant alongside § 541(a)(1).  Thus, § 541 recognizes that "all legal and equitable interests" are legally distinct from "proceeds" from those interests.[1]

The Trustee cites a long list of cases that he insists establishes that proceeds gained post-petition, pre-conversion are property of the estate.[2]  But the cases he relies on are distinguishable.  They address primarily whether proceeds from the sale of property are generally part of a Chapter 7 estate or whether appreciation in the value of property is part of the estate in a Chapter 13 to Chapter 7 conversion.  They do not address our question here: whether, in a post-

---

[1] The parties discuss at length whether post-petition, pre-conversion appreciation in value of the house is included in the Chapter 7 estate upon conversion.  And this is the question the bankruptcy court and the BAP addressed in finding for the Debtors.  But we need not decide whether appreciation in a house still owned by debtors at the time of conversion is property of the debtors or the estate.  That is not the case before us.  We are dealing with *proceeds* from the sale of the house, not the house itself.  Thus, our conclusion relies only on whether cash remaining from a post-petition, pre-conversion real property sale is included in the Chapter 7 estate upon conversion.  As we explain in this section, it is not.

[2] *See* Aplt. Br. at 17–18 (citing *Wilson v. Rigby*, 909 F.3d 306, 308–09 (9th Cir. 2018); *In re Orton*, 687 F.3d 612, 619 (3d Cir. 2012); *In re Gebhart*, 621 F.3d 1206, 1211 (9th Cir. 2010); *Hyman v. Plotkin*, 967 F.2d 1316, 1321 (9th Cir. 1992); *In re Potter*, 228 B.R. 422, 424 (9th Cir. BAP 1999); *In re Celentano*, No. 10-22833 NLW, 2012 WL 3867335, at *5 (Bankr. D.N.J. 2012) (unpublished); *In re Prospero*, 107 B.R. 732, 735 (Bankr. C.D. Cal. 1989); *In re Paolella*, 85 B.R. 974, 976 (Bankr. E.D. Pa. 1988)).

confirmation conversion from Chapter 13 to Chapter 7, proceeds from the post-petition sale of property are identical to the underlying property that the debtor possessed on the Chapter 13 petition date. Based upon § 348(f)(1)(A)'s plain language, when read alongside § 541(a), they are not.

Based on the plain language of § 348(f)(1)(A), then, the sale proceeds—a property interest distinct from the physical house from which they were derived—do not enter the converted Chapter 7 estate. *See* 11 U.S.C. § 348(f)(1)(A); *see also* David Carlson, *The Chapter 13 Estate and Its Discontents*, 17 Am. Bankr. Inst. L. Rev. 233, 280 (2009) ("If this principle is taken seriously, then *proceeds* of what historically was property of the estate do not go to the chapter 7 trustee. Although it is easy to forget, proceeds are, strictly speaking, after-acquired property." (emphasis in original)). The physical house was not "in the possession of or . . . under the control of the [D]ebtor[s] on the date of conversion"—they had sold it. 11 U.S.C. § 348(f)(1)(A). And the proceeds from the sale of the physical house did not exist on the date of filing the Chapter 13 petition, so the proceeds cannot have "*remain[ed]* in the possession of or [have been] under the control of the debtor on the date of conversion[.]" *Id.* (emphasis added).

The automatic vesting provision of § 1327(b) supports our conclusion that the proceeds from the sale of the Debtors' house are not included in the Chapter 7 estate. Under § 541(a)(6), only proceeds "of or from property of the estate" become property of the bankruptcy estate. In a typical Chapter 13 case, this provision is operative only before confirmation of the Chapter 13 plan because

confirmation "vests all of the property of the estate in the debtor." *Id.* § 1327(b).

Thus, proceeds generated from the debtor's property after confirmation do not



§ 348(f)(1)(A): "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion"

Chapter 13 petition filing date — Confirmation — Sale of home — Chapter 7 conversion date

= all legal or equitable interests of the debtor in property as of the commencement of the case (§ 541(a)(1))

$ = proceeds from property of the estate (§ 541(a)(6))

= confirmation of a plan vests all the property of the estate in the debtor (§ 1327(b))

become property of the estate as the underlying property no longer belongs to the

estate.[3]

---

[3] We recognize this interpretation potentially creates a conflict with 11 U.S.C. § 1306, which provides that property of the estate includes all property—as defined in § 541—that the debtor "acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title." 11 U.S.C. § 1306(a)(1). Many courts have attempted to resolve the inherent tension between § 1327's revestment provision and § 1306's after-acquired property provision. *See In re Larzelere*, __ B.R. __, 2021 WL 3745428, at *3–4 (Bankr. D.N.J. Aug. 24, 2021) (collecting cases); *In re Baker*, 620 B.R. 655, 665 (Bankr. D. Colo. 2020) (same). Given that the Debtors' proceeds here did not exist at the commencement of the case and thus did (continued . . .)

The Trustee's view that the post-confirmation proceeds from the sale of the Debtors' house became property of the estate ignores § 1327(b)'s revestment provision. At the time the Debtors sold their house, the Debtors' Chapter 13 plan had been confirmed and the house had been revested in the Debtors. As a result, the Debtors' house was not property of the Chapter 13 estate when the Debtors sold it. The proceeds generated from the sale of the house were therefore not "proceeds . . . of or from property of the estate." *See id.* § 541(a)(6).

Although the bankruptcy court and the BAP reached the same outcome we do here, they did so by asserting the statutory language is ambiguous and pivoting to legislative history. The BAP quoted the House of Representatives' Committee on the Judiciary Report on the Bankruptcy Act of 1994, which discussed the amendment to § 348 as follows:

> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that property of the estate in a converted case is the

not become part of the converted Chapter 7 estate under § 348(f)(1)(A), we need not decide whether the proceeds ever became part of the Chapter 13 estate.

> property the debtor had when the original chapter 13 petition was filed.
>
> . . .
>
> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

Aplt. App. at 250–51.  The Third Circuit in *Bobroff* determined that a Chapter 13 debtor's tort claims that accrued post-petition, pre-conversion were not part of the converted Chapter 7 estate.  Conversely, the Seventh Circuit in *Lybrook* concluded that real estate inherited by a Chapter 13 debtor post-petition but pre-conversion was part of the converted Chapter 7 estate.  *See In re Bobroff*, 766 F.2d at 803; *In re Lybrook*, 951 F.2d at 137.  So, the legislative history supports the outcome to which the plain text already points: the pre-conversion house-sale proceeds are not property of the Chapter 7 estate.  Because the text, structure, and context of these provisions confirm our analysis, we need not rely on the legislative history.

We recognize that our interpretation of § 348(f)(1)(A) potentially allows converting debtors to sell property of the estate after confirmation of the Chapter 13 plan prior to conversion to shield the value of those assets from creditors.  But 11 U.S.C. § 348(f)(2) already ensures that if a debtor converts in "bad faith," "the property of the estate in the converted case shall consist of the property of the

estate as of the date of *conversion*."[4] (Emphasis added.)  What's more, the

Bankruptcy Code appears to anticipate that debtors may be able to take these

types of actions in some instances.  Specifically, it permits a debtor to protect

assets to the detriment of his creditors as long as those actions are not taken in

bad faith.  *See, e.g.*, *Hanson v. First Nat. Bank in Brookings*, 848 F.2d 866, 868

(8th Cir. 1988) ("[U]nder the Code, a debtor's conversion of non-exempt property

to exempt property on the eve of bankruptcy for the express purpose of placing

that property beyond the reach of creditors, without more, will not deprive the

debtor of the exemption to which he otherwise would be entitled."); *but see In re*

*Fobber*, 256 B.R. 268, 279 (Bankr. E.D. Tenn. 2000) ("[Section] 348(f) was

never designed to be a safe harbor for debtors who fraudulently and

surreptitiously dispose of property of the estate while in chapter 13.").

Nevertheless, the issue of bad faith is not before us, so we need not decide

---

[4]  Indeed, the power of bankruptcy courts to make bad-faith determinations is broad.  *See* 11 U.S.C. § 105 (stating that a bankruptcy court may, "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process"); *see also Marrama*, 549 U.S. at 375 (discussing the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code").  In these fact-intensive inquiries, bankruptcy courts look at the "totality of circumstances" and have wide discretion in considering all the facts.  *See, e.g.*, *In re Pac. Rim Invs., LLP*, 243 B.R. 768, 773 (Bankr. D. Colo. 2000); *In re Siegfried*, 219 B.R. 581, 585 (Bankr. D. Colo. 1998) (finding a debtor's conversion from Chapter 13 to Chapter 7 was in bad faith due in part to the debtor's "pattern of dissembling, failure to fully or accurately disclose financial affairs, disingenuous explanations of wrongful conduct and unfair manipulation of the bankruptcy system to the detriment of his creditors").

whether the Debtors acted in bad faith here.[5]  It is our job to interpret the

statutory text, and it is up to Congress to set the parameters in which debtors and

creditors operate.[6]

---

[5]  Though not at issue in this case, the Bankruptcy Code may also limit the extent to which debtors converting from Chapter 13 to Chapter 7 can shield their assets from secured creditors.  The Code states that

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such agreement extends to property of the debtor acquired before the commencement of the case and to proceeds . . . of such property, then such security interest extends to such proceeds . . . acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).  Creditors may also request a modification of a confirmed Chapter 13 plan to account for proceeds from the post-confirmation sale of an asset by the debtor.  *See id.* § 1329(a).  Creditors are protected when a plan is modified because any modification of a confirmed plan requires the bankruptcy court to consider the best interests of the creditors.  *See id.* § 1329(b) (incorporating § 1325(a)(4)).  The court will only modify a plan if creditors receive the same or greater value under the modified plan as they would under a Chapter 7 liquidation.  *Id.*; *In re Baker*, 620 B.R. at 658.  There may also be other techniques creditors can deploy if they fear surviving assets will be sold after Chapter 13 confirmation.

[6]  We understand that several bankruptcy courts have reached the opposite conclusion in similar cases, electing to treat post-petition, pre-conversion proceeds as property of the estate.  *See, e.g.*, *In re Laflemme*, 397 B.R. 194, 203 (Bankr. D.N.H. 2008) (treating commissions the debtor earned pre-petition, but did not receive until after filing the petition, as property of the estate upon conversion from Chapter 13 to Chapter 7); *In re Grein*, 435 B.R. 695, 702 (Bankr. D. Colo. 2010) ("[E]ven though the Debtors . . . did not possess nor control the [assets] at the time of reconversion, these assets are property of the reconverted (continued . . .)

\*   \*   \*

The most faithful reading of the statutory text supports the conclusion that the proceeds from the sale of the Debtors' house belong to the Debtors, not the Chapter 7 estate.

## III.  Conclusion

We accordingly AFFIRM the Bankruptcy Appellate Panel.

---

Chapter 7 estate because literal application of 11 U.S.C. § 348(f)(1)(A) would produce absurd results and permit debtors to engage in carte blanche fraud."). Nevertheless, we believe the text is plain and guides our result here.  If Congress believes that debtors are abusing § 348(f)(1)(A), it can address any unintended consequences.