# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-2491

_____

In re: Machele L. Goetz

*Debtor*

------------------------------

Machele L. Goetz

*Appellant*

v.

Victor Felix Weber, Chapter 7 Trustee

*Appellee*

------------------------------

National Consumer Bankruptcy Rights Center; National Association of Consumer Bankruptcy Attorneys

*Amici on Behalf of Appellant(s)*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: January 11, 2024
Filed: March 8, 2024

_____

Before SMITH, Chief Judge, GRUENDER and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

In this bankruptcy case, we must decide whether a post-petition, pre-conversion increase in equity in the debtor's residence became property of her converted bankruptcy estate—a question over which "courts are heavily divided." See In re Castleman, 75 F.4th 1052, 1055 & n.3 (9th Cir. 2023) (collecting cases), cert. denied, 2024 WL 674785 (U.S. Feb. 20, 2024) (No. 23-615). Here, the bankruptcy court[1] held that it did, the Bankruptcy Appellate Panel for the Eighth Circuit (BAP) affirmed, and Goetz now appeals. Having jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

I.

On August 19, 2020, Machele Goetz filed a chapter 13 bankruptcy petition and plan. She owned a residence worth $130,000 and claimed a $15,000 homestead exemption under Missouri law. Freedom Mortgage held a $107,460.54 lien against the residence. It is undisputed that had the trustee liquidated the residence on the date of the petition, the estate would have received nothing net of the exemption, the lien, and the sale expenses.

Later, on April 5, 2022, the bankruptcy court granted Goetz's motion to convert her case from chapter 13 to chapter 7. Between the chapter 13 filing and the date of the conversion order, Goetz's residence had increased in value by $75,000, and she had paid down a further $960.54 on the mortgage. Had the trustee liquidated the residence on the date of conversion, more than $62,000 net of the exemption, the lien, and the sale expenses would have been produced.

_____

[1]The Honorable Brian T. Fenimore, United States Bankruptcy Judge for the Western District of Missouri.

After realizing that the trustee might sell the residence given the change in value, Goetz moved for the bankruptcy court to compel the trustee to abandon it. Goetz argued that the residence was of "inconsequential value and benefit to the estate" under 11 U.S.C. § 554(b), asserting that the post-petition, pre-conversion increase in equity must be excluded from the calculation of her residence's value to the estate. The trustee resisted Goetz's motion, arguing that, under 11 U.S.C. § 348(f), the bankruptcy estate in a converted case includes post-petition, pre-conversion increase in equity, meaning Goetz's residence was still of value to the estate.

The parties agreed that abandonment was appropriate unless the post-petition, pre-conversion increase in equity was part of the converted estate. The bankruptcy court concluded that it was. It reasoned that, under the plain text of 11 U.S.C. § 348(f)(1)(A) and § 541, the equity in Goetz's residence was property of her converted estate because it was property of the estate that she owned on the date of her petition and which she retained at conversion. The BAP affirmed, rejecting many of the same arguments that Goetz now urges again on appeal.

## II.

"On appeal from a decision of the BAP, we act as a second reviewing court of the bankruptcy court's decision, independently applying the same standard of review as the BAP. The relevant facts in this case are undisputed, and we review the bankruptcy court's conclusions of law *de novo*." In re Lasowski, 575 F.3d 815, 818 (8th Cir. 2009) (citation omitted). Goetz raises several points of error, but none focus on the text of the relevant Code provisions.

"[W]e start where we always do: with the text of the [Code]." Bartenwerfer v. Buckley, 598 U.S. 69, 74 (2023) (first alteration in original) (citation omitted). Where, as here,

[A] case under chapter 13 of this title is converted to a case under another chapter under this title . . . property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion.

11 U.S.C. § 348(f)(1)(A). In other words, the property of the estate in Goetz's converted chapter 7 case consists of the property of the estate as of the date she filed her chapter 13 bankruptcy petition (August 19, 2020) that remained in her possession as of the date of conversion from chapter 13 to chapter 7 (April 5, 2022).

"Property of the estate" is itself a term of art defined in the Code. See id. § 541.[2] In relevant part, property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," id. § 541(a)(1), and the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case," id. § 541(a)(6).

Goetz's *residence* is property of the converted estate because she held "legal or equitable interest[]" in it as of August 19, 2020, id. § 541(a)(1), and because it remained in her possession when she converted her case to chapter 7 on April 5, 2022, id. § 348(f)(1)(A). The question is whether the post-petition, pre-conversion increase in equity in that residence is also part of the converted estate. "The plain text of the Bankruptcy Code begins and ends our analysis." Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016). We start with the first half of the definition of property of the converted estate: whether the property in question was "property of the estate, as of the date of filing of the petition." 11 U.S.C. § 348(f)(1)(A).

---

[2]We note that 11 U.S.C. § 1306(a)'s definition of property of the estate is inapplicable here because that definition is expressly limited to chapter 13 cases, and Goetz's case is a converted case under chapter 7. See 11 U.S.C. § 103(j); see also id. § 1307(a) (explaining that a "debtor may convert a case under [chapter 13] to a case under chapter 7 of this title at any time").

Property of the estate at "[t]he commencement of a case" includes "[p]roceeds . . . of or from property of the estate." Id. § 541(a)(6). A voluntary case in bankruptcy commences when the petition is filed. Id. § 301(a); see also id. § 348(a) ("Conversion of a case from a case under one chapter of this title to a case under another chapter of this title . . . does not effect a change in the date of the filing of the petition [or] the commencement of the case . . . ."). But the Code does not define "proceeds" or "equity," so "we may look to dictionaries . . . to determine the meaning." Schwab v. Reilly, 560 U.S. 770, 783 (2010); see also Franklin Cal. Tax-Free Tr., 579 U.S. at 126 (looking to Black's Law Dictionary and the Oxford English Dictionary for the meaning of "define"). Proceeds are "[t]he value of land, goods, or investments when converted into money; the amount of money received from a sale." Proceeds, Black's Law Dictionary (11th ed. 2019). Equity is "[t]he amount by which the value of or an interest in property exceeds secured claims or liens; the difference between the value of the property and all encumbrances on it." Equity, Black's Law Dictionary (11th ed. 2019). An encumbrance is "[a] claim or liability that is attached to property or some other right . . . that may lessen its value, such as a lien or mortgage." Encumbrance, Black's Law Dictionary (11th ed. 2019).

The post-petition, pre-conversion increase in equity in Goetz's residence—i.e. the difference between its value and the homestead exemption and lien—is therefore proceeds "*from* property of the estate," 11 U.S.C. § 541(a) (emphasis added), because it is the amount of money that the estate would receive *from* a sale of the residence before sale expenses. Cf. In re Potter, 228 B.R. 422, 424 (B.A.P. 8th Cir. 1999) ("Nothing in Section 541 suggests that the estate's interest is anything less than the entire asset, including any changes in its value which might occur after the date of filing."). Accordingly, the post-petition, pre-conversion increase in equity in Goetz's residence was property of the estate at "[t]he commencement of [the] case." 11 U.S.C. § 541(a).

Now consider the second half of the definition of property of the converted estate: whether the property in question "remain[ed] in the possession of or [wa]s under the control of the debtor on the date of conversion." Id. § 348(f)(1)(A). The

equity in Goetz's residence remained in her possession or control on the date of conversion because she still possessed her residence on that date, giving her effective control over the equity therein. See Harris v. Viegelahn, 575 U.S. 510, 514 (2015) (describing how, in a chapter 13 plan, a debtor retains their property); In re Barrera, 22 F.4th 1217, 1221-22 (10th Cir. 2022) (describing how a chapter 13 debtor sold their home before converting to chapter 7, "pocket[ing]" the equity that had grown since their initial bankruptcy filing). Put differently, by possessing her residence, Goetz controlled the "inseparable" equity. Castleman, 75 F.4th at 1055-56 (citation omitted) (concluding that "appreciation in the property value and corresponding increase in equity belongs to the estate upon conversion" from chapter 13 to chapter 7). We therefore conclude that, under the plain text of the Code, the post-petition, pre-conversion increase in equity in Goetz's residence is property of the converted chapter 7 estate.[3]

Goetz urges a different result, but her arguments are unavailing. First, she argues that her *entire* residence was exempted from the bankruptcy estate at the commencement of her chapter 13 case because the trustee agreed there was no liquidation value in the residence as of that date. But that misunderstands the nature of the exemption claimed and the trustee's stipulation. Missouri's homestead exemption allows "[t]he homestead of every person, . . . not exceeding the value of fifteen thousand dollars, . . . [to] be exempt." Mo. Rev. Stat. § 513.475.1. This

---

[3]At oral argument, counsel for Goetz was asked whether, under his view, a debtor could end up owing the estate the difference if her property *declined* in value, assuming that the converted estate should be valued as if frozen in time at the date of filing. Counsel agreed that this would be an unusual outcome given the low probability of the estate ever recovering that difference in equity from a debtor. This hypothetical bolsters our interpretation of the Code: the debtor is not on the hook for decreases in equity between filing and conversion, nor does she stand to gain from increases. See Castleman, 75 F.4th at 1058 ("In this case, th[e] property increased in value. In other cases, the value might decline, or the value of one asset in the estate might increase while other property depreciates in value. This is simply a happenstance of market conditions, which sometimes will benefit the debtor and sometimes benefit the estate.").

allows the exemption of the homestead up to a certain dollar amount, not the *in-kind* exemption of the entire residence. Nor did the trustee stipulate to the exemption of the residence in kind: rather, the trustee stipulated that "there would have been no proceeds in excess of those necessary to pay the lien, homestead [exemption], and costs of sale" if the residence was liquidated on the date of filing.

In a similar vein, Goetz argues that her residence "vested" in her upon confirmation of her chapter 13 plan. See 11 U.S.C. §1327(b) ("[T]he confirmation of a plan vests all of the property of the estate in the debtor."). This argument is easily disposed of: "When a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway." Harris, 575 U.S. at 520.

The Amici also rely on the "complete snapshot rule" to suggest that Goetz's converted estate should be "evaluate[d] . . . on the day [s]he file[d] for bankruptcy[,] without considering any developments after that date." According to the First Circuit, the snapshot rule states that "[e]xemptions are determined at the time the debtor files for bankruptcy," meaning that "the debtor's financial situation is frozen in time, as if someone had taken a snapshot of it." In re Rockwell, 968 F.3d 12, 18 (1st Cir. 2020). The Amici argue that we embraced this principle in In re Sawyers, 2 F.4th 1133 (8th Cir. 2021), but we disagree. Sawyers merely recognizes that, under 11 U.S.C. § 522(a)(2), the "value" of a home for the purpose of applying an exemption is "based on the property's fair market value as of the petition date." Id. at 1137-40 (declining to include the amount of an insurance payout on a fire-damaged home when calculating its fair market value on the debtor's petition date); see also Castleman, 75 F.4th at 1058 n.5 (noting that "the debtor's homestead exemption is fixed as of the 'snapshot' value on the date of the original filing"). Moreover, these principles have no bearing on whether the post-petition, pre-conversion increase in equity in Goetz's residence is property of the converted estate: no one disputes the value of Goetz's residence on the date of filing or the date of conversion, and the Code's temporally limited definition of "value" in § 522(a)(2)

is expressly confined to that section only.  See 11 U.S.C § 522(a)(2) (limiting the definition to "this section").

Goetz's appeal to the legislative history of 11 U.S.C. § 348(f)(1) is equally unpersuasive.  No amount of legislative history can defeat the plain text of the Code.  "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, . . . 'judicial inquiry is complete.'" Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations omitted) (analyzing interlocutory jurisdiction over bankruptcy appeals).  Again, whatever we might say about the legislative history of § 348(f)(1), "[t]he plain text of the Bankruptcy Code begins and ends our analysis." Franklin Cal. Tax-Free Tr., 579 U.S. at 125.

Goetz and the Amici next argue that this result punishes the good-faith debtor who attempts a chapter 13 plan, pays down their mortgage, and then converts to chapter 7.  But this argument fares no better.  The Code's values are not monolithic.  "[It] strikes a balance between the interests of insolvent debtors and their creditors." Bartenwerfer, 598 U.S. at 72.  "[The Code is not] focused on the unadulterated pursuit of the debtor's interest. . . . [T]he Code, like all statutes, balances multiple, often competing interests." Id. at 81.  "No statute pursues a single policy at all costs, and we are not free to rewrite this statute (or any other) as if it did." Id.  While "we are sensitive to the hardship [Goetz] faces," id. at 83, "none of [Goetz's] policy arguments can overcome the Code provisions . . . that govern this case," Schwab, 560 U.S. at 791.

To the extent that Goetz's brief can be read as arguing that the post-petition, pre-conversion increase in equity in her home is not property of the converted estate because it was contingent or non-existent at the time she filed her petition, we reject the argument.  We find no textual support in the Code for the proposition that "[p]roceeds" of property of the estate must exist at the commencement of the case. 11 U.S.C. § 541(a)(6).  First, "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" are not modified by any temporal language in subsection

-8-

(a)(6), unlike the exception for "earnings from services performed by an individual debtor after the commencement of the case." Id. Second, the Code's definition of property of the estate expressly contemplates future, contingent interests. See, e.g., id. (offspring); id. § 541(a)(7) ("Any interest in property that the estate acquires after the commencement of the case."). Third, "[t]he Supreme Court has interpreted the definition of 'property of the estate' broadly." In re Simply Essentials, LLC, 78 F.4th 1006, 1008 (8th Cir. 2023). It "includes property of all descriptions, tangible and intangible, as well as causes of action." Id. (citation omitted). There is no requirement "that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings." Id. at 1008-09 (quoting United States v. Whiting Pools, Inc., 462 U.S. 198, 206 (1983)). And "[t]he property of the estate includes inchoate or contingent interests held by the debtor prior to the filing of bankruptcy." Id. at 1009.

Finally, to the extent that Goetz and the Amici rely on In re Barrera, 22 F.4th 1217 (10th Cir. 2022) to argue for a different result, we reject the argument. Barrera is distinguishable. The Barrera debtors *sold* their residence after confirmation of their chapter 13 plan, but before conversion to chapter 7. Id. at 1222. And the Tenth Circuit faced a different question than we do today. There, the question was "whether, in a post-confirmation conversion from Chapter 13 to Chapter 7, proceeds from the post-petition sale of property are identical to the underlying property that the debtor possessed on the Chapter 13 petition date." Id. at 1223.

III.

For the foregoing reasons, we affirm.

_____